IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELINDA KNEPP | : | |
| | : | Civil Action No. 4: 06-CV-1018 |
| Plaintiff, | : | |
| | : | (Judge McClure) |
| v. | : | |
| | : | |
| UNITED STONE VENEER, LLC., | : | |
| | : | |
| Defendant | : | |

**M E M O R A N D U M**

September 5, 2007

**BACKGROUND:**

On May 18, 2006, plaintiff Melinda Knepp instituted this civil action against defendant, United Stone Veneer, LLC ("USV"). In her complaint, plaintiff alleges a cause of action based on Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act ("PHRA"). Specifically, plaintiff complains that she was sexually harassed by an employee of USV and then terminated from employment when she repeatedly refused the employee's advances. Defendant filed an answer to the complaint on June 22, 2006.

The parties are now conducting discovery. On July 11, 2007, plaintiff attempted to conduct the deposition of Robin Barrett, the wife of David Barrett, the employee who allegedly sexually harassed plaintiff. During the deposition, Robin

Barrett, who was retained by defense counsel for the purposes of representation at the deposition, invoked the attorney-client privilege and spousal privilege. Plaintiff disagreed with the assertion of both privileges, and after an effort to resolve the dispute, the parties contacted the court for guidance. The court directed the parties to stop the deposition and directed defendant to file a motion for a protective order. On July 17, 2007, defendant filed a motion for a protective order and supporting brief. Opposing and reply briefs have been filed and the matter is ripe for disposition. Now, for the following reasons, we will grant in-part and deny in-part defendant's motion.

**DISCUSSION:**

**I. Applicable Standard**

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets the contours for discovery and provides that "[p]arties may obtain discovery of any matter, <u>not privileged</u>, that is relevant to the claim or defense of any party." (emphasis added). Furthermore, Rule 26(c) allows a party to move for a protective order to prevent the discovery of certain evidence in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . ." Finally, Rule 501 of the Federal Rules of Evidence governs evidentiary privileges and

states that:

> T]he privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of witness, person, government, State, or political subdivision thereof shall be determined in accordance with state law.

In other words, Rule 501 states that federal privilege law applies to federal claims, and state privilege law applies to state claims. Pearson v. Miller, 211 F.3d 57, 66 (3d Cir. 2000). Yet, the Third Circuit has noted that in a case that involves both federal and state claims in the same action, the problems associated with the application of two separate privilege rules are readily apparent. Id. at 66. For example, it is unworkable to attempt to apply two separate privilege rules with respect to a federal and state claim tried to the same jury. Id. (quoting Wm. T. Thompson Co. v. General Nutrition Corp., 671 F.2d 100, 104 (3d Cir. 1982). The Third Circuit resolved this potential conflict by creating a rule that states that "when there are federal law claims in a case also presenting state law claims, the federal rule favoring admissibility, rather than the state law privilege, is the

controlling rule." Id. (citing Wm. T. Thompson, 671 F.2d at 104).[1]

## II. Attorney-Client Privilege

Prior to her deposition, Robin Barrett retained defense counsel in order to represent her at the deposition. At the deposition, plaintiff's counsel attempted to ask her questions about her discussions with counsel prior to the deposition. Defendant's counsel objected to these questions on the basis of attorney-client privilege and the deposition then proceeded to the next topic.

Under federal law, communications are protected under the attorney-client privilege when: (1) legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection may be waived. In re Grand Jury Proceeding Impounded, 241 F.3d 308, 316 n. 6 (3d Cir. 2001) (citation omitted).

Plaintiff has conceded in her opposition brief that if Robin Barrett has retained defense counsel to represent her for the purpose of seeking a legal opinion,

---

[1] It is worth noting that neither party commented on this Third Circuit rule and that both parties point towards both federal privilege law and Pennsylvania privilege law in their briefs, the very problem which the Third Circuit attempted to avoid in Wm. T. Thompson.

she has a right to assert the attorney-client privilege to protect those conversations. (Rec. Doc. No. 54, at 14.) That is exactly what appears to have occurred here and we find that such conversations are therefore protected by the attorney-client privilege. We will therefore grant defendant's motion for a protective order to the extent it seeks to protect conversations between Robin Barrett and her attorney.[2]

## III. Spousal Privilege

At the deposition, plaintiff's counsel also attempted to ask Robin Barrett questions regarding conversations that she had with her spouse, David Barrett, the employee who allegedly sexually harassed plaintiff. Specifically, plaintiff's counsel inquired into conversations between Robin and David Barrett regarding David Barrett's feelings for plaintiff. Defense counsel objected to this inquiry on

---

[2] Plaintiff makes the separate argument that because defense counsel now represents a third-party witness, a conflict of interest has arisen and defense counsel should be disqualified from the case. (Rec. Doc. No. 54, at 14.) Yet, plaintiff does not elaborate on why a conflict exists. Rather, she supports this conflict argument by arguing that defense counsel "should not be permitted to discover relevant and necessary information from [Robin Barrett] while at the same time preventing the plaintiff from discovering said information based upon the assertion of the attorney-client relationship." (Id.) Because plaintiff does not present any legal basis for this disqualification argument, and because we rule in the "Spousal Privilege" section of this memorandum that Robin and David Barrett have waived the marital communications privilege with respect to the subject matter of David Barrett's feelings for plaintiff, which likely solves plaintiff's dilemma, we see no need to consider this argument any further.

the basis of spousal privilege.

Plaintiff's counsel countered that the privilege had been waived based on defendant's response to the complaint. By way of background, plaintiffs complaint to the Pennsylvania Human Relations Commission ("PHRC") alleged that David Barrett told plaintiff that he had strong feelings for her on December 23, 2003. (Pl.'s PHRC Compl., Rec. Doc. No. 5, Ex. 2, ¶ 7.) Defendant's answer admitted this allegation in part and that David Barrett had actually expressed his strong feelings earlier in 2003. (Def.'s Answer to Pl.'s PHRC Compl., Rec. Doc. No. 5, Ex. 3, ¶ 7.) Defendant also answered that David Barrett told his wife and plaintiff's aunt, a receptionist at United Stone Veneer, about his feelings for plaintiff. (Id.) Defendant responded to plaintiff's waiver argument that the answer only indicated that a discussion occurred and did not detail any details of the discussion, which does not constitute a waiver.

In the instant motion for a protective order, defendant relies on two different marital privileges: the adverse spousal privilege (which protects an individual from testifying against his or her spouse) and the marital communications privilege (which protects confidential communications between spouses). We will now consider the applicability of each of these privileges.

A. Adverse Spousal Privilege

The adverse spousal privilege is a common law privilege that prevents an individual from testifying against his or her spouse in a criminal proceeding. Appeal of Malfitano, 633 F.2d 276, 277 (3d Cir. 1980). The purpose of this privilege is to prevent the disharmony in the marriage that could occur when one spouse testifies against the other. Id. at 277-78. The privilege applies to testimony of any kind (including matters before the marriage), but can only be raised during a valid marriage. United States v. Ammar, 714 F.2d 238, 258 (3d Cir. 1983); Fallowfield Development Corp. v. Strunk, Civ. No. 89-8644, 1990 WL 52749, at *3 (E.D.Pa. April 25, 1990) (Hutton, J.) (citation omitted).

In Hawkins v. United States, the Supreme Court recognized the adverse spousal privilege as federal common law and ruled that one spouse could not testify against the other in a criminal proceeding unless both consent. 358 U.S. 74, 78 (1958). In Trammel v. United States, the Court noted the erosion of the adverse spousal privilege in the states and modified the Court's ruling in Hawkins by vesting the privilege solely in the testifying spouse. 445 U.S. 40, 48-49, 53 (1980).

To the extent that defendant relies on the adverse spousal privilege, we find it inapplicable for two reasons. First, Robin Barrett is not being compelled to testify against her husband. Her husband is not a defendant in the current

litigation. Therefore, we do not believe the justification for the privilege, which is preserving marital harmony, is applicable. Second, even if David Barrett was a party to this case or if it could be argued that the testimony of Robin Barrett is adverse to him even though he is not a party to this case, we believe the adverse spousal privilege is only applicable in criminal proceedings. Although defendant cites several federal cases that question whether the adverse spousal privilege is applicable to civil proceedings, defendant has not cited any federal cases that actually applied it to civil proceedings and we have been unable to find any on our own. See Meridian Mortg. Corp. v. Spivak, Civ. No. 91-3932, 1992 WL 205640, at * 2 (E.D.Pa. Aug. 14, 1992) (citing In re Martenson, 779 F.2d 461, 463 n. 6 (8th Cir. 1985) (questioning the applicability of the adverse spousal privilege in a civil context); Puricelli v. Houston, Civ. No. 99-2982, 2000 WL 298922, at * 8 (E.D.Pa. Mar. 15, 2000) (same). We believe the adverse spousal privilege is not applicable to a civil proceedings because the justification for the privilege of maintaining marital harmony is not as applicable to a civil case as a criminal case. An individual testifying against his or her spouse in a criminal case, where the consequences are more severe, is much more likely to cause disharmony in the marriage than testimony in a civil case. Furthermore, although the court in Trammel upheld the federal adverse spousal privilege, it was clearly concerned

about the viability of the federal privilege considering the erosion of this privilege in the states. Id. at 48-49, 53. Thus, it would hardly make sense for us to extend the privilege beyond where Trammel held it to be applicable to a civil proceeding in which the spouse is not even a defendant. Therefore, to the extent defendant relies on the adverse spousal privilege, we find it not to be applicable.

B. Marital Communications Privilege

The marital communications privilege permits a testifying spouse to refuse to disclose confidential communications between the spouses. Ammar, 714 F.2d at 258. Yet, unlike the adverse spousal privilege (which applies to all testimony), this privilege only reaches communications made in confidence during a valid marriage and intended to be confidential. Id. (citation omitted). The rationale behind the marital communications privilege is similar to that of other communications privileges, which is to encourage open and honest communications between husband and wife and accord a sufficient degree of privacy to marital relationships. United States v. Parker, 834 F.2d 408, 411 (4th Cir. 1987). We believe that unlike the adverse spousal privilege, but like other communications privileges such as the psychotherapist-patient privilege and the attorney-client privilege, the marital communications privilege applies to civil matters and even applies if the witness or witness's spouse is not a party to the proceeding. See Caplan v. Fellheimer Eichen

Braverman & Kaskey, 162 F.R.D. 490, 492 (E.D.Pa. 1995) (Joyner, J.) (implying that the marital communications privilege applies in a civil context). This is because the rationale behind the privilege of encouraging open and honest communications is only furthered if the spouses are able to keep the communication confidential from everyone, regardless of the type of case.

This does not end our analysis. Like all other privileges, the marital communications privilege is subject to waiver. United States v. Premisese Known as 281 Syossett Woodbury Road, Woodbury, N.Y., 71 F.3d 1067, 1072 (2d Cir. 1995). Plaintiff argues that the privilege has been waived based on defendant's answer to the complaint. As mentioned earlier, defendant's answer to plaintiff's complaint to the PHRC stated that David Barrett told his wife about his strong feelings for plaintiff. (Def.'s Answer to Pl.'s PHRC Compl., Rec. Doc. No. 5, Ex. 3, ¶ 7.) The only way that defendant could have known this is if either David or Robin Barrett told defendant, or if someone else was present for the conversation. Under the latter situation, the communication would not have been privileged in the first place, because the communication was made in the presence of a third party and therefore not made in confidence. Wolfle v. United States, 291 U.S. 7, 14 (1934). The former situation requires further consideration, and we note that the case law is scant on this issue and the parties' briefs are less than helpful.

If the spouse claiming the privilege is also the spouse that made the communication and then voluntarily disclosed it to a third-party, we have no doubt that the privilege would be waived. Yet, in the current scenario, Robin Barrett is claiming the privilege, David Barrett made the communication, and we are unsure which spouse disclosed the contents of the communication. Nevertheless, we believe the privilege has been waived. First, we note that when one spouse makes a confidential communication to another, both parties can claim the privilege with respect to that communication, not just the communicating spouse. United States v. Montgomery, 384 F.3d 1050, 1057-58 (9th Cir. 2004). Therefore, had David Barrett's statement remained confidential, we have no doubt that Robin Barrett could have claimed the privilege with respect to David Barrett's statement. Furthermore, if David Barrett is the spouse who voluntarily disclosed the communication, it would not make any sense to allow Robin Barrett to continue to assert the privilege with respect to this communication. This is because if the speaker voluntarily disclosed the contents of the communication, the justification for the privilege, which is to encourage open and honest communications, is not furthered by allowing the listener to continue to assert the privilege. Finally, even if Robin Barrett was the spouse that voluntarily disclosed David Barrett's statement, it does not make any sense to allow her to assert the privilege as to

communications she previously decided to disclose. Although it could be argued that allowing the listener to waive the privilege could discourage the speaker from communicating openly and honestly, we think allowing the listener to waive the marital communications privilege is not much different than the rule from the adverse spousal privilege that the testifying spouse can waive that privilege, despite the fact that it may cause disharmony in the marriage.[3] In other words, it is the voluntary decision of the spouse, not legal compulsion, that caused the disharmony or the discouragement of open communication in the marriage. Thus, we believe that the privilege has been waived regardless of which spouse disclosed the communication.

Its worth noting that defendant makes absolutely no argument that a voluntary disclosure by either spouse of communications made by David Barrett to Robin Barrett does not constitute a waiver of the marital communications privilege. Defendant's only argument is that its answer to the PHRC complaint only acknowledges that the conversation took place, which is not enough to waive the

[3] It is also worth noting that the same could not necessarily be said for other communications privileges, such as the attorney-client or psychotherapist-patient privilege. This is because the marital communications privilege is unique with respect to communications privileges in that both spouses are in equal positions within the relationship, unlike the attorney or psychotherapist who are employed by the client or patient.

privilege, because the substance of the communication is still confidential. (Rec. Doc. No. 51, at 16.) We disagree with this assertion. The answer did not only reveal that a conversation took place, but it revealed the substance of the conversation, which was that David Barrett had strong feelings for plaintiff. .

The only remaining question is the extent of the waiver. This disclosure does not waive the privilege with respect to all confidential communications between Robin and David Barrett. Still, we will follow the rule for the attorney-client privilege and find that the privilege has been waived as to all communications on the same subject matter, which would be David Barrett's feelings for plaintiff. Murray v. Gemplus Intern., S.A., 217 F.R.D. 362, 366 (E.D.Pa. 2003) (Schiller, J.) (quoting Weil v. Inv./Indicators, Research & Mmgt., 647 F.2d 18, 24 (9th Cir. 1981) (stating that it "is well-established that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject." (internal quotations removed)). Therefore, we will reject defendant's motion for a protective order concerning communications between Robin and David Barrett about David Barrett's feelings for plaintiff.

**CONCLUSION:**

To the extent that defendant seeks a protective order protecting conversations between Robin Barrett and her attorney based on the attorney-client privilege, the motion will be granted. On the other hand, to the extent defendant seeks a protective order preventing Robin Barrett from being compelled to testify in this matter based on the adverse spousal privilege, the motion will be denied. Similarly, to the extent defendant seeks a protective order based on the marital communications privilege preventing Robin Barrett from being compelled to testify concerning communications between herself and David Barrett about David Barrett's feelings for plaintiff, the motion will be denied.

s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELINDA KNEPP | : | |
| | : | Civil Action No. 4: 06-CV-1018 |
| Plaintiff, | : | |
| | : | (Judge McClure) |
| v. | : | |
| | : | |
| UNITED STONE VENEER, LLC., | : | |
| | : | |
| Defendant | : | |

**O R D E R**

September 5, 2007

In accordance with the accompanying Memorandum,

**IT IS HEREBY ORDERED THAT:**

Defendant's motion for a protective order is GRANTED to the extent it seeks protection based on the attorney-client privilege and DENIED to the extent it seeks protection based on the adverse spousal privilege and the marital communications privilege. (Rec. Doc. No. 50.)

s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge