IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELINDA KNEPP | : | |
| | : | Civil Action No. 4: 06-CV-1018 |
| Plaintiff, | : | |
| | : | (Judge McClure) |
| v. | : | |
| | : | |
| UNITED STONE VENEER, LLC., | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM**

September 23, 2008

**BACKGROUND:**

On May 18, 2006, plaintiff Melinda Knepp instituted this civil action against

defendant United Stone Veneer, LLC ("USV"), setting forth claims under Title VII

of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and under

the Pennsylvania Human Relations Act, 43 P.S. §§ 951, et seq. ("PHRA").  In her

four-part complaint,  plaintiff contends that she was sexually harassed by David

Barrett, defendant's employee and plaintiff's supervisor, continuously over a ten-

month period; defendant was aware of the harassment but failed to take action to

prevent or rectify the problem and plaintiff was terminated from employment after

repeatedly rebuffing Barrett's advances and notifying management of his activities.

Defendant asserts that Barrett's conduct did not rise to the level of sexual

harassment in the plaintiff's mind, and that, even if it did, defendant is not liable

for any alleged sexually hostile work environment because the plaintiff failed to act

with  reasonable care to take advantage of the employer's sexual harassment policy.

Defendant also contends that the plaintiff did not suffer an adverse employment

action, necessary to sustain a Title VII retaliation action.

The parties have completed discovery.  On July 16, 2008, defendant filed its

motion for summary judgment.  Opposing and reply briefs have been filed and the

matter is ripe for disposition.  (Rec. Doc. No. 93).  For the following reasons, we

will deny defendant's motion.


**DISCUSSION:**

## I.  Standard of Review

It is appropriate for a court to grant a motion for summary judgment "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled a judgment as a matter of law."  Fed. R.

Civ. P. 56(c).  An issue is genuine "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986). "Material facts" are those which might affect the

outcome of the suit.  Id.; Justofin v. Metropolitan Life Ins. Co., 372 F.3d 517, 521 (3d Cir. 2004).

"If the nonmoving party has the burden of persuasion at trial, 'the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.'" Jalil v. Avdel Corp., 873 F.2d 701, 706 (3d Cir. 1989) (quoting Chippolini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d. Cir. 1987)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In evaluating a motion for summary judgment the court will draw all reasonable inferences from the evidence in the record in favor of the nonmoving party.  Am. Flint Glass Workers Union v. Beaumont Glass Co., 62 F.3d 574, 578 (3d Cir. 1995).  The nonmoving party, however, cannot defeat a motion for summary judgment by merely offering general denials, vague allegations, or conclusory statements; rather the party must point to specific evidence in the record that demonstrates that there is a genuine issue as to a material fact.  See Celotex, 477 U.S. at 321; Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

## II.  Statement of Facts

The facts of record, viewed in a light most favorable to Ms. Knepp, the non-moving party, are as follows.  The plaintiff began working in 2001 as a secretary at Apple Ridge Stone of Northeast Pennsylvania, LLC,  the defendant's predecessor. In 2004, Apple Ridge became USV, a manufacturer of building siding.  While plaintiff was employed with USV, she reported directly to David Barrett, who was the office supervisor and later became part owner of USV prior to 2004.  Plaintiff primarily worked in the office, performing the company's administrative duties. While working in this capacity,  Knepp alleges that Barrett began to sexually harass her in December 2003.  Despite Knepp's repeatedly rebuffing Barrett's advances, Barrett continued to tirelessly pursue and profess his love for Knepp.  In January 2004, at the latest, Angela Barrett, one of Knepp's supervisory managers, USV shareholder and Barrett's mother, became aware of . Barrett's actions. However, no action or investigation was launched.  From January 2004 until September 2004, Barrett continued to convey his feelings to Knepp through emails and letters on a daily basis.

On or about September 2, 2004, Barrett insisted that Knepp acquire other employment because his feelings for her and her refusal to reciprocate neutralized his effectiveness at his position.  Approximately five days later,  Knepp arrived at work and discovered a handwritten note from Barrett attached to her computer.

4

The note, written in reference to Knepp's consulting EEOC's website, quipped "So this is what it comes down too [sic]?  Your computer is already on!"  As a result of the harassment, the note, information regarding Barrett assaulting a woman in the past coming to light and Barrett sending the plaintiff an AOL instant message describing her as a "weak person," Knepp became frightened of Barrett and immediately notified USV majority shareholder Larry Yarger of Barrett's actions and her concerns.  After Knepp provided Yarger with emails and other correspondences from Barrett, Yarger told Knepp that he would address the situation and that she should spend the rest of September 7 and September 8 at home.  Yarger also authorized Knepp to use accrued vacation time.  While the plaintiff was on vacation, Barrett had Knepp's office packed up and delivered to her.  Knepp assumed that she was fired.  USV never prevented Barrett from terminating Knepp's employment, nor was she offered her job back.

### III.  Plaintiff's Hostile Work Environment Claim

Plaintiff alleges she was subjected to sexual harassment that created a

hostile work environment in violation of Title VII and PHRA.[1]  To succeed in

making such a claim, plaintiff must establish five elements:

> (1) the employee suffered intentional discrimination
> because of her sex; (2) the discrimination was pervasive
> and regular; (3) the discrimination detrimentally affected
> the plaintiff; (4) the discrimination would detrimentally
> affect a reasonable person of the same sex in that
> position; and (5) the existence of respondeat superior
> liability.

Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999) (citing Andrews

v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990)).  For purposes of this

motion, defendant challenges plaintiff's ability to meet the second, third, fourth

and fifth element, arguing that plaintiff's evidence fails to establish a genuine issue

of material fact that the plaintiff subjectively and objectively felt harassed and that

respondeat superior liability exists for defendant.

    In determining whether a work environment is hostile, we must look at the

totality of the circumstances.  Harris v. Forklift Sys., 510 U.S. 17, 23 (1993).  In

doing so, incidents of harassment should not be considered in isolation, but must

---

[1] We note that PHRA claims are interpreted coextensively with Title VII
claims.  Douris v. Genaurdi's Family Markets, Inc., 132 Fed. Appx. 425, 425 n.1
(3d Cir. 2005) (citing Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996));
Dennison v. Pennsylvania Dept. Of Corrections, 268 F. Supp. 2d. 387, 405 n. 16
(M.D. Pa. 2003.) (Munley, J.).  Therefore, our analysis of both plaintiff's hostile
work environment and retaliation claims under Title VII will apply with equal
force to the claims plaintiff asserts under PHRA.

be evaluated on the basis of their cumulative effect.  Durham Life Ins. Co. v. Evans, 166 F.3d 139, 155 (3d Cir. 1999) (citations omitted).  As a result, plaintiff's sexual harassment claim will survive summary judgment if plaintiff presents sufficient evidence to give rise to an inference that the harassment altered the conditions of the victim's employment and created an abusive working environment.  Pennsylvania State Police v. Suders, 542 U.S. 129, 146 (2004) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)).

In the case at bar, both parties disagree on whether the discrimination was severe and pervasive and if plaintiff was subjectively and objectively affected detrimentally by the alleged discrimination.   Defendant contends that although Barrett repeatedly expressed love and affection for Knepp, he never propositioned her sexually or touched her inappropriately at any time.  This assertion is largely immaterial, however, because "an employee can demonstrate that there is a sexually hostile work environment without proving blatant sexual misconduct." Spain v. Gallegos, 26 F.3d 439, 447 (3d Cir. 1994).  Discrimination on the basis of sex may be shown through actions which are not sexual in nature.   Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 n.3 (3d Cir. 1990); See Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1083 (3d Cir. 1996) (stating that to prove sexual discrimination "[a]ll that is required is a showing that [gender] is a

7

substantial factor in the harassment, and that if the plaintiff had been [male] she would not have been treated in the same manner."). In determining whether non-sexual conduct surpasses the threshold level for severity and pervasiveness, we must consider the severity and frequency of the harassment and the degree of abuse. Harris, 510 U.S. 17 at 23.

Although "simple teasing, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment," Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998), Knepp was subject to ten months of continuous, unabated harassment which she contends made her fearful of Barrett, disrupted her ability to fulfill the aspects of her employment comfortably and created significant concerns regarding her future with USV. During this period, it is alleged Barrett offered Knepp a pay raise, promised a promotion and suggested company ownership would be forthcoming if she acquiesced to the relationship. Defendant asserts that Barrett's activities, while inappropriate, do not satisfy the threshold for actionable harm.[2]

---

[2] In support of its assertion, defendant relies upon Alagna v. Smithville, 324 F. 3d 975 (8th Cir. 2003), in which a guidance counselor's continual pursuit of a teacher was found not to reach the serve or pervasive level because the guidance counselor did not inappropriately touch or solicit the teacher for sex. It should be noted that we distinguish this case, and any others relying upon similar facts, from the circumstances at bar because they involve non-supervisory co-worker harassment, not harassment levied by a supervisor.

We disagree and find that in light of the favorable consideration granted to the non-moving party's allegations, there is sufficient evidence for a reasonable jury to conclude that Barrett's harassment of Knepp was severe and pervasive enough to alter the terms of Knepp's employment.

Further, the parties both disagree as to whether Knepp was subjectively and objectively affected by defendant's harassment. As to the subjective element, "if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment and there is no Title VII violation." Harris, 510 U.S. at 21-22. Consequently, this prong is not satisfied unless the harasser's advances are unwelcome. Meritor Savings Bank, 477 U.S. at 68. However, plaintiff need not demonstrate actual economic harm in order to show that their job conditions have been altered in violation of Title VII. Harris, 510 U.S. at 21.

In fulfilling the objective prong, the plaintiff must prove that the harasser's conduct is severe and pervasive enough to create an employment atmosphere a reasonable person would find hostile or abusive. Id. As previously noted, the court must consider all the circumstances surrounding the harassment, including "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance.  Id. at 23.

Defendant contends that Knepp's statements that she was happy at USV and that she and Barrett had maintained a friendly relationship demonstrate that she was neither subjectively nor objectively impacted by the harassment.  Plaintiff disagrees, and argues that she was forced to endure ten months of unwanted advances and harassment, which she repeatedly rebuked, and  rumors and innuendo from co-workers suggesting she was having an affair with Barrett, and that as a result of these incidents she experienced emotional and professional trauma.

In the court's view, plaintiff has adduced evidence sufficient to satisfy these elements.  As discussed above, Barrett continuously propositioned the plaintiff, a married mother of two children, for a relationship.   In response, plaintiff clearly rejected Barrett's advances each time.  Perhaps most importantly, plaintiff indicates that the ten-month ordeal led her to fear for her personal and professional future, taxed her emotional health and subjected her to ridicule from co-workers. A reasonable jury could conclude that no employee should have to endure a situation where one's employment or ability to operate successfully within the workplace is contingent upon entering into a relationship with one's boss, nor should an employee be forced to endure ten months of unwelcomed pursuit.

Therefore, plaintiff has proffered enough evidence to fulfill the subjective and objective prongs, and we will not subvert the trier of fact's responsibility to determine the credibility of a party or the reasonableness of that individual's actions, emotions, beliefs or responses.

When the source of the alleged harassment is a supervisor, as it is in this matter, the court must entertain two possibilities regarding the respondeat superior liability element.  If, as plaintiff asserts, the supervisor harassment is accompanied by a tangible employment action, the employer is strictly liable for the harassment. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 759 (1998).  "A tangible employment action is one that 'constitutes a significant change in employment status, such a hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Williams v. Pennsylvania State Police, 481 F. Supp. 2d 424, 431 (W.D. Pa. 2007) (quoting Ellerth, 524 U.S. at 761).  This also includes situations involving constructive discharge, where the "working conditions become so intolerable that a reasonable person would have felt compelled to resign."  Pennsylvania State Police v. Sunders, 542 U.S. 129, 146 (2004) (citing Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1160 (8th Cir. 1999)); Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1015 (7th  Cir. 1997).

11

The facts and the inferences raised regarding the respondeat superior liability element are almost entirely disputed between the parties.  Defendant contends that plaintiff resigned her position voluntarily or, at worst, there was a miscommunication between the two parties resulting in her termination.  In contrast, plaintiff asserts that she never resigned from USV and was effectively fired when her office was packed up and delivered to her while she was on authorized vacation.  Plaintiff also argues that the discharge was the product of an intentional termination, not a miscommunication, because Knepp was never offered her job back.

For the purposes of this motion, we agree with plaintiff.  Although defendant claims that Knepp's aunt, Shirley Shawver, informed USV that Knepp was not returning to work, plaintiff offers sufficient evidence to oppose this notion by demonstrating that neither Knepp nor Shawver  notified USV that she had resigned.  Furthermore, even if we were to accept that Knepp resigned from USV, there is sufficient evidence regarding the harassment, both in severity and duration, and Barrett's escalating confrontational attitude, including his requests that she search for other employment, to indicate that a reasonable individual would have felt compelled to resign.  Therefore, any further inquiry into the alleged tangible employment action must be resolved by the jury.

We note that this conclusion renders an analysis of the sexual harassment policy notification requirement unnecessary.  However, we believe it is important to make clear that if no tangible employment action occurred, as defendant contends, plaintiff would survive defendant's motion for summary judgment.

Where no tangible employment action is taken, an employer may raise an affirmative defense to the respondeat superior liability if it shows that "(a) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  Faragher, 524 U.S. at 807 (citing Fed. Rule. Civ. Pro. 8(c)).  Defendant argues that plaintiff neglected to adhere to the company's sexual harassment policy when she failed to notify the defendant of the harassment prior to September 7, 2004, thereby violating the second prong and inferring that plaintiff deprived defendant of an opportunity to prevent or correct the behavior.  Conversely, plaintiff states that notification was not required prior to September 7, 2004 and that even if it was, she had already complied with the requirement.

Regarding the alleged lapse in time from the harassment, which started in December 2003, until notification in September 7, 2004, it is well settled that "the reasonableness of the delay in reporting is a question of fact for a jury to decide."

Clegg v. Falcon Plastics, Inc., 174 Fed. Appx. 18, 26 (3rd Cir. 2006) (citing

Cardenas v. Massey, 269 F.3d 251, 267 (3d Cir. 2001).  Moreover, it is the

plaintiff's contention, and we agree, that management was aware of the harassment

well in advance of September 2004.

　　An employer is considered aware of the harassment if the plaintiff proves

that "management-level employees had actual or constructive knowledge about the

existence of a sexually hostile environment."  Andrews, 895 F.2d at 1486.  To

establish constructive notice, the plaintiff can either prove (1) management-level

employees were provided with enough information to "raise a probability of sexual

harassment in the mind of a reasonable employer," or (2) "the harassment is so

pervasive and open that a reasonable employer would have had to be aware of it."

Kunin, 175 F.3d at 294.  Focusing on the first possibility, we have stated in the

past that "'a supervisor's knowledge generally will be imputed to the company for

purposes of liability only if the supervisor is at a sufficiently high level in the

company hierarchy.'"  Anderson v. Deluxe Homes of PA, Inc., 131 F. Supp. 2d

637, 651 (M.D. Pa. 2001) (quoting Bishop v. Nat'l Railroad Passenger Corp., 66 F.

Supp. 2d 650, 667 (E.D. Pa. 1999)).

　　Considering that one cannot reach a higher level in the company hierarchy

than ownership, co-owners are undoubtedly "management-level" personnel,

especially when such individuals are actively involved in managing the daily operations of the business.  As a result, constructive notice could be imputed to USV for two main reasons: (1) Barrett, USV *co-owner*, agent and management personnel, acknowledges that unwanted romantic advances would constitute sexual harassment, (Rec. Doc. No. 98-2, pp. 113-14.), and that if such conduct was reported to him the sexual harassment reporting requirement would be satisfied (Rec. Doc. No. 98-2, pp. 52-53.); and, (2) Knepp informed Angela Barrett, one of Knepp's managers and a *co-owner* and agent of USV, of Mr. Barrett's unwanted advances prior to September 2004, ( Rec. Doc. No. 93-2, p. 221.), and Ms. Barrett admitted that she was aware of Mr. Barrett's infatuation by January 2004, (Rec. Doc. No. 98-5, pp. 116, 149-53), yet no investigation was launched nor any preventative action adopted.

A  reasonable individual could also find that the harassment was so open and pervasive as to provide USV with constructive notice.  As noted above, plaintiff had discussed Mr. Barrett's behavior with Angela Barrett in advance of September 2004, and Ms. Barrett had noticed that Mr. Barrett was exhibiting troubling behavior.  (Rec. Doc. No. 98-5, pp. 126-21, 140-41, 145.)  Ms. Barrett had also informed Larry Yarger, USV's majority shareholder, of defendant's feelings for the plaintiff in December of 2003.  (Rec. Doc. No. 98-6, pp. 161-66; Rec. Doc. No.

98-8, pp. 50-51.)  Finally, and perhaps most importantly, the

ten-month long harassment pattern triggered rumors and innuendo amongst

plaintiff's co-workers, a reaction we believe a jury could reasonably find resulted

from open and pervasive harassment, of which management should have been

cognizant.


## IV.  Plaintiff's Retaliation Claim

Plaintiff claims she was fired because she complained of sexual harassment.

Retaliation claims under Title VII proceed in the familiar three stages set forth in

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36

L. Ed. 2d 668 (1973).  First, the plaintiff must provide sufficient evidence to

establish a prima facie case of discrimination.  Jones v. Sch. Dist. of Philadelphia,

198 F.3d 403, 410 (3d Cir. 1999).  Second, if plaintiff succeeds in doing so, the

burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory

reason for the employee's rejection.'"  Id. (citing McDonnell Douglas Corp., 411

U.S. at 802).  Finally, if the defendant carries this burden, then the plaintiff must

prove by a preponderance of the evidence that the legitimate reasons offered by the

defendant are not true but rather act as mere pretext for the discrimination.  Id.

(citation omitted).

Defendant contends that  plaintiff was not fired or, at worst, that plaintiff's termination was the result of mutual mistake.  As discussed above, plaintiff survives summary judgment on this point.  Therefore, plaintiff's retaliation action will survive summary judgment if she has established a prima facie case.  To establish a prima facie case, the plaintiff must demonstrate that: (1) she engaged in protected activity; (2) the employer took adverse employment action against her; and (3) there was a causal connection between the protected activity and the adverse employment action.  Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997).

In order to establish that the plaintiff's action is a protected activity, the plaintiff need only prove that she acted with a good faith, reasonable belief that a Title VII claim existed.  Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006).  Lodging informal protests of discriminatory practices, including complaining to management, are considered protected activities.  Andreoli v. Gates, 482 F.3d 641, 650 (3d Cir. 2007) (quoting Moore, 461 F.3d at 343).  And, as detailed above, plaintiff has proffered sufficient evidence that defendant's conduct constitutes a discriminatory practice, she complained about the harassment to management on several occasions and that an alleged adverse employment action was taken, thereby satisfying the first and second prong of the Kachmar test.

17

To demonstrate a causal link between the protected activity - complaining about sexual harassment - and the adverse employment action - her termination, plaintiff can rely solely on evidence of temporal proximity between the filing of the complaint and the adverse employment action taken against her as long as such evidence is "unusually suggestive of retaliatory motive." Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 n. 9 (3d Cir. 2003) (citations omitted).  In addition to temporal proximity, plaintiff may also rely on evidence of ongoing antagonism, evidence of other retaliatory acts, or other evidence from the record that can infer causation.  See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

The fact that only a few days passed between plaintiff's complaint to defendant's majority shareholder and termination of her employment is unusually suggestive, by itself, of a retaliatory motive, and we find that it is sufficient to establish causation.  It is also important to note that Barrett repeatedly suggested that Knepp seek additional employment because he was unable to perform his job adequately with her present .  It may be inferred from that fact that she was terminated for rebuking his advances.

With sufficient evidence of temporal proximity and antagonism, plaintiff pled a prima facie case of causation between her sexual harassment complaint and

18

termination of her employment.  Defendant's argument that Knepp's termination was a mistake does not qualify as a "legitimate, nondiscriminatory reason for the employee's rejection."[3]  For these reasons, plaintiff's retaliation claim stands.


**CONCLUSION:**

For the aforementioned reasons, the court will deny defendant United Stone Veneer, LLC's motion for summary judgment against plaintiff Melinda Knepp.



        s / James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

---

[3]The second stage in the <u>McDonnell Douglas Corp.</u> burden shifting is for the defendant to articulate a legitimate, non-discriminatory reason for plaintiff's firing, which the defendant fails to do.  As a result, we decline to discuss the matter further.  However, even if we were to accept defendant's mutual mistake argument as a legitimate, non-discriminatory reason for termination, which we do not, plaintiff's contention that her job was never offered back to her creates the basis for an inference that would be sufficient to rebut defendant's legitimate, nondiscriminatory reason for her firing.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MELINDA KNEPP                    :
                                 :     Civil Action No. 4: 06-CV-1018
              Plaintiff,         :
                                 :     (Judge McClure)
         v.                      :
                                 :
UNITED STONE VENEER, LLC.,       :
                                 :
              Defendant          :

**O R D E R**

September 23, 2008

For the reasons set forth in the accompanying memorandum,


**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

Defendant's motion for summary judgment (Rec. Doc. No. 93) is denied.




        s / James F. McClure, Jr.
        James F. McClure, Jr.
        United States District Judge

1