IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELINDA KNEPP | : | |
| | : | Civil Action No. 4: 06-CV-1018 |
| Plaintiff, | : | |
| | : | (Judge McClure) |
| v. | : | |
| | : | |
| UNITED STONE VENEER, LLC., | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM**

September 23, 2008

**BACKGROUND:**

On May 18, 2006, plaintiff Melinda Knepp instituted this civil action against defendant United Stone Veneer, LLC ("USV"), setting forth claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and under the Pennsylvania Human Relations Act, 43 P.S. §§ 951, et seq. ("PHRA"). In her four-part complaint, plaintiff contends that she was sexually harassed by David Barrett, defendant's employee and plaintiff's supervisor, continuously over a ten-month period; defendant was aware of the harassment but failed to take action to prevent or rectify the problem and plaintiff was terminated from employment after repeatedly rebuffing Barrett's advances and notifying management of his activities.

Defendant asserts that Barrett's conduct did not rise to the level of sexual

harassment in the plaintiff's mind, and that, even if it did, the defendant is not liable for any alleged sexually hostile work environment because the plaintiff failed to act with reasonable care to take advantage of the employer's sexual harassment policy. Defendant also contends that the plaintiff did not suffer an adverse employment action, necessary to sustain a Title VII retaliation action.

The parties have completed discovery. On July 18, 2008, plaintiff filed her motion for summary judgment. (Rec. Doc. No. 96). Opposing and reply briefs have been filed and the matter is ripe for disposition. For the following reasons, we will deny plaintiff's motion.

**DISCUSSION:**

### I. Standard of Review

It is appropriate for a court to grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those which might affect the

outcome of the suit.  Id.; Justofin v. Metropolitan Life Ins. Co., 372 F.3d 517, 521 (3d Cir. 2004).  In evaluating a motion for summary judgment the court will draw all reasonable inferences from the evidence in the record in favor of the nonmoving party.  Am. Flint Glass Workers Union v. Beaumont Glass Co., 62 F.3d 574, 578 (3d Cir. 1995).

    Regardless of who bears the burden of persuasion at trial, the party moving for summary judgment has the burden to show an absence of genuine issues of material fact.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996) (citations omitted).  To meet this burden when the moving party bears the burden of persuasion at trial, it must point to evidence in the record that supports its version of all material facts and demonstrate an absence of genuine issues of material fact.  National State Bank v. Federal Reserve Bank, 979 F.2d 1579, 1582 (3d Cir. 1992).  If the moving party does not meet this burden, the court must deny summary judgment even if the nonmoving party does not produce any opposing evidence.  Id.  However, if the moving party meets its burden, the nonmoving party cannot defeat a motion for summary judgment by merely offering general denials, vague allegations, or conclusory statements; rather the party must point to specific evidence in the record that demonstrates that there is a genuine issue as to a material fact.  See Celotex Corp. V. Catrett, 477 U.S. 317, 321 (1986); Ridgewood

Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

## II.  Statement of Facts

The facts of record, viewed in a light most favorable to USV, the non-moving party, are as follows.  The plaintiff began working in 2001 as a secretary at Apple Ridge Stone of Northeast Pennsylvania, LLC,  the defendant's predecessor.  In 2004, Apple Ridge became USV, a manufacturer of building siding.  While plaintiff was employed with USV, she reported directly to David Barrett, who was the office supervisor and later became part owner of USV prior to 2004.  Plaintiff primarily worked in the office, performing the company's administrative duties.  While working in this capacity,  Knepp alleges that Barrett began to sexually harass her in December 2003.  Despite Knepp's repeatedly rebuffing Barrett's advances, Barrett continued to tirelessly pursue and profess his love for Knepp.  In January 2004, at the latest, Angela Barrett, one of Knepp's supervisory managers, USV shareholder and David Barrett's mother, became aware of Barrett's actions.  However, no action or investigation was launched. From January 2004 until September 2004, Barrett continued to convey his feelings to Knepp through emails and letters on a daily basis.  Although plaintiff rebuffed these advances, she tried to maintain a friendship with Barrett and stated that she

was generally happy as an USV employee.

On or about September 2, 2004, Barrett sent Knepp an email suggesting that she acquire other employment because he had feelings for her and her refusal to reciprocate neutralized his effectiveness at his position.  Additional notes indicate Barrett began to treat Knepp with an increasing level of hostility.  Approximately five days later, Knepp arrived at work and discovered a handwritten note from Barrett attached to her computer.  The note, written in reference to Knepp's consulting the EEOC's website, quipped "So this is what it comes down too [sic]?  Your computer is already on!"  As a result of the harassment, the notes, information regarding Barrett's assaulting a woman in the past coming to light and Barrett's sending the plaintiff an AOL instant message describing her as a "weak person," Knepp became frightened of Barrett and immediately notified USV majority shareholder Larry Yarger of Barrett's actions and her concerns.  After Knepp provided Yarger with emails and other correspondences from Barrett, Yarger told Knepp that he would address the situation, and that she should spend the rest of September 7 and September 8 at home.  Yarger also authorized Knepp to use her accrued vacation time.  While the plaintiff was on vacation, Barrett attempted to contact her.  After she refused to communicate with him, Barrett asked Knepp's aunt and fellow USV employee, Shirley Shawver, to contact Knepp

and inquire about the possibility of her returning to work. Knepp notified Shawver that "she wasn't coming back." Shawver informed Barrett of Knepp's decision and told him that Knepp would come to the office to retrieve personal items from her office. Barrett then asked Shawver to clean out Knepp's office and deliver the items to Knepp's home.

### III.  Plaintiff's Hostile Work Environment Claim

Plaintiff alleges she was subjected to sexual harassment that created a hostile work environment in violation of Title VII and PHRA.[1] To succeed in making such a claim, plaintiff must establish five elements:

> (1) the employee suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability.

Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990)). For purposes of this

---

[1] We note that PHRA claims are interpreted coextensively with Title VII claims.  Douris v. Genaurdi's Family Markets, Inc., 132 Fed. Appx. 425, 425 n.1 (3d Cir. 2005) (citing Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996)); Dennison v. Pennsylvania Dept. Of Corrections, 268 F. Supp. 2d. 387, 405 n. 16 (M.D. Pa. 2003.) (Munley, J.).  Therefore, our analysis of both plaintiff's hostile work environment and retaliation claims under Title VII will apply with equal force to the claims plaintiff asserts under PHRA.

motion, defendant challenges plaintiff's claim that the second, third, fourth and fifth elements have been satisfied.

In determining whether a work environment is hostile, we must look at the totality of the circumstances. Harris v. Forklift Sys., 510 U.S. 17, 23 (1993). In doing so, incidents of harassment should not be considered in isolation, but must be evaluated on the basis of their cumulative effect. Durham Life Ins. Co. v. Evans, 166 F.3d 139, 155 (3d Cir. 1999) (citations omitted). As a result, a defendant will survive plaintiff's motion for summary judgment if defendant presents sufficient evidence to give rise to an inference that the harassment did not alter the conditions of the victim's employment and create an abusive working environment. Pennsylvania State Police v. Suders, 542 U.S. 129, 146 (2004) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)).

In the case at bar, both parties disagree as to whether the discrimination was severe and pervasive and if plaintiff was subjectively and objectively affected detrimentally by the alleged discrimination. Defendant contends that although Barrett repeatedly expressed love and affection for Knepp, he never propositioned her sexually or touched her inappropriately at any time. This assertion is largely immaterial, however, because "an employee can demonstrate that there is a sexually hostile work environment without proving blatant sexual misconduct."

Spain v. Gallegos, 26 F.3d 439, 447 (3d Cir. 1994).  Discrimination on the basis of sex may be shown through actions which are not sexual in nature.  Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 n.3 (3d Cir. 1990); See Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1083 (3d Cir. 1996) (stating that to prove sexual discrimination "[a]ll that is required is a showing that [gender] is a substantial factor in the harassment, and that if the plaintiff had been [male] she would not have been treated in the same manner.").  In determining whether non-sexual conduct surpasses the threshold level for severity and pervasiveness, we must consider the severity and frequency of the harassment and the degree of abuse.  Harris, 510 U.S. 17 at 23.

Although "simple teasing, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment," Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998), Knepp was subjected to ten months of continuous, unabated harassment which she contends made her fearful of Barrett, disrupted her ability to fulfill the aspects of her employment comfortably and created significant concerns regarding her future with USV.  During this period, she asserts that Barrett offered Knepp a pay raise, promised a promotion and suggested company ownership would be

forthcoming if she acquiesced to the relationship.  Defendant asserts that Barrett's activities, while inappropriate, do not satisfy the threshold for actionable harm.[2]  However, defendant neglected to point to specific, applicable evidence in the record that demonstrates that the harassment was not severe and pervasive.  Therefore, even in light of the favorable consideration granted to the non-moving party's assertions, we disagree with defendant and find that there is sufficient evidence for a reasonable jury to find that Barrett's harassment of Knepp was severe and pervasive.

Further, the parties both disagree as to whether Knepp was subjectively and objectively affected by defendant's harassment.  As to the subjective element, "if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment and there is no Title VII violation."  Harris, 510 U.S. at 21-22.  Consequently, this prong is not satisfied unless the harasser's advances are unwelcome.  Meritor Savings Bank, 477 U.S. at  68.  However, plaintiff need not demonstrate actual

---

[2] In support of its assertion, defendant relies upon Alagna v. Smithville, 324 F. 3d 975 (8th Cir. 2003), in which a guidance counselor's continual pursuit of a teacher was found not to reach the severe or pervasive level because the guidance counselor did not inappropriately touch or solicit the teacher for sex.  It should be noted that we distinguish this case, and any others relying upon similar facts,  from the circumstances at bar because they involve non-supervisory co-worker harassment, not harassment levied by a supervisor.

economic harm in order to show that her job conditions have been altered in violation of Title VII.  Harris, 510 U.S. at 21.

Responding to plaintiff's contention that this element is satisfied because she has shown that she was subjected to ten months of continuous, unabated advances that she rebuked in every instance, defendant states that plaintiff never ordered Barrett to stop his advances, she maintained a friendship with Barrett throughout the period in question and she admitted to being generally happy with her working environment.  Although we find that the record clearly shows that plaintiff notified Barrett that his advances were unwelcome, we hold that the evidence suggesting that she was happy with the workplace and remained friends with Barrett is sufficient to give rise to the inference that, despite his advances, she was not affected by the alleged harassment.  Consequently, plaintiff's credibility regarding this issue and the effect of her actions are questions for a jury to resolve.

In fulfilling the objective prong, the plaintiff must proof that the harasser's conduct is severe and pervasive enough to create an employment atmosphere which a reasonable person would find hostile or abusive.  Id.  As previously noted, the court must consider all the circumstances surrounding the harassment, including "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance.  Id. at 23.

We find that a genuine issue of material fact exists regarding the reasonableness of the plaintiff's feelings and actions for the same reasons that we hold an issue of fact exists regarding the subjective prong.  Consequently, we recognize that it is unnecessary to examine the fifth Kunin element, respondeat superior liability, and, in the interest of judicial economy, decline to do so.

### IV.  Plaintiff's Retaliation Claim

Plaintiff claims she was fired because she complained of sexual harassment. Retaliation claims under Title VII proceed in the familiar three stages set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973).  First, the plaintiff must provide sufficient evidence to establish a prima facie case of discrimination.  Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999).  Second, if plaintiff succeeds in doing so, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the employee's rejection.'"  Id. (citing McDonnell Douglas Corp., 411 U.S. at 802).  Finally, if the defendant carries this burden, then the plaintiff must prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are not true but rather act as mere pretext for the discrimination.  Id.

(citation omitted).  To establish a prima facie case, the plaintiff must demonstrate that: (1) she engaged in protected activity; (2) the employer took adverse employment action against her; and (3) there was a causal connection between the protected activity and the adverse employment action.  <u>Kachmar v. SunGard Data Sys., Inc.</u>, 109 F.3d 173, 177 (3d Cir. 1997).

Concentrating on the second prong first, an adverse employment action is one that "constitutes a significant change in employment status, such as a hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 761 (1998); <u>Durham Life Ins. Co. V. Evans</u>, 166 F.3d 139, 153 (3d Cir. 1999) ("If an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions, a tangible adverse employment action may be found.").  This also includes any situation where the "working conditions become so intolerable that a reasonable person would have felt compelled to resign." <u>Pennsylvania State Police v. Sunders</u>, 542 U.S. 129, 146 (2004) (citing <u>Breeding v. Arthur J. Gallagher & Co.</u>, 164 F.3d 1151, 1160 (8th Cir. 1999)); <u>Perry v. Harris Chernin, Inc.</u>, 126 F.3d 1010, 1015 (7th  Cir. 1997).

Plaintiff contends that she was terminated from employment by Barrett after

repeatedly refusing his advances and notifying management of his conduct. However, defendant offers sufficient evidence to oppose this notion by demonstrating that Knepp informed Shawver, who subsequently notified Barrett, that she was not returning to USV.

Additionally, the reasonableness of the alleged resignation is a question for the trier of fact because the defense proffered evidence indicating that Knepp maintained a friendship with Barrett and that she was pleased with her working environment, thereby casting doubt on whether the harassment reached a level of severity which would compel a reasonable individual to resign. Viewing the facts in a light most favorable to the defendant,[3] USV has proffered sufficient evidence to raise a genuine issue of material fact regarding the second prong of the <u>Kachmar</u> test. Therefore, we need not evaluate the retaliation claim further.

---

[3]In opposition to plaintiff's retaliation claim defendant references several facts, including ¶¶ 52, 58 and 64 of Defendant's Statement of Material Facts (Rec. Doc. No. 102). We note that these three paragraphs were not considered in resolving this motion because their inclusion in the statement of material facts violates local rule 56.1. ("Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that supports the statements.").

**CONCLUSION:**

For the aforementioned reasons, the court will deny plaintiff Melinda Knepp's motion for summary judgment against defendant United Stone Veneer, LLC.

    s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELINDA KNEPP | : | |
| | : | Civil Action No. 4: 06-CV-1018 |
| Plaintiff, | : | |
| | : | (Judge McClure) |
| v. | : | |
| | : | |
| UNITED STONE VENEER, LLC., | : | |
| | : | |
| Defendant | : | |

# **O R D E R**

September 23, 2008

For the reasons set forth in the accompanying memorandum,

**IT IS HEREBY ORDERED THAT:**

Plaintiff's motion for summary judgment (Rec. Doc. No. 96) is denied.

   s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

1